**O**

# United States District Court
# Central District of California

ANTON TOUTOV,

               Plaintiff,

      v.

CURATIVE LABS INC.; CURATIVE INC.; JONATHAN MARTIN; PAUL SCOTT; KORVA HOLDINGS LLC; and KORVA SCIENTIFIC, INC.,

               Defendants.

Case № 2:20-cv-11284-ODW (MAAx)

**ORDER DENYING MOTION TO DISMISS [23]; AND GRANTING MOTION TO DISMISS [31]**

## I.  INTRODUCTION

Plaintiff Dr. Anton Toutov brings this action for breach of contract and fiduciary duties regarding his minority ownership of an anti-doping testing consultancy startup that ultimately became a very profitable COVID-19 testing company.  (*See* Compl., ECF No. 1.)  Defendants move to dismiss.  (Curative Defs. Mot. Dismiss ("Curative Mot."), ECF No. 23; Korva Defs. Mot. Dismiss ("Korva Mot."), ECF No. 31.)  For the reasons that follow, the Court **DENIES** the Curative Motion and **GRANTS** the Korva Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.   PLAINTIFF'S ALLEGATIONS

In November 2014, Jonathan Martin and Paul Scott started a laboratory testing consulting services company, initially incorporated under the name "SA Laboratories Inc," later renamed as "KorvaLabs, Inc.," and ultimately "Curative Labs, Inc." (Compl. ¶¶ 2, 21, 27–31.)  In April 2015, Martin recruited Toutov to join and become one of that company's three founders, to expand the company into a successful testing laboratory.  (*Id.*)  Scott was the Chief Executive Officer, Martin was the Chief Financial Officer and Chief Operations Officer, and Toutov would be the Chief Science Advisor.  (*Id.* ¶¶ 4, 29–33.)  Toutov would be the company's only founder with an advanced degree in chemical or biological sciences.  (*Id.* ¶ 4.)

In exchange for Toutov contributing his scientific expertise, credentials, reputation,[2] and network to build the company into a testing laboratory, KorvaLabs offered Toutov "a 20% equity interest in the company and a promise of financial compensation in the future once the company started earning more revenues."  (*Id.* ¶¶ 30–32.)  At the time, KorvaLabs had neither the infrastructure nor necessary certifications to conduct any scientific testing, and because it had no significant business operations, it could not offer Toutov a salary.  (*Id.* ¶¶ 2, 28, 32.)  Toutov accepted the offer.  (*Id.* ¶¶ 31–33.)

Martin, Scott, and Toutov ran the company jointly, collaborating on all important decisions through informal meetings and telephone calls.  (*Id.* ¶ 6.)  Martin and Scott controlled the board of directors and the company's day-to-day finances and Toutov focused on the company's operations and growth.  (*Id.*)  For instance, Toutov arranged for KorvaLabs to move into and build out an advanced lab space in San Dimas, California that became critical to the company' growth and success.  (*Id.* ¶¶ 36–40.)

---

[2] Toutov is an award-winning entrepreneur, chemist, and published researcher. He holds a Ph.D. from the California Institute of Technology in organic chemistry and is an inventor on more than sixty granted patents and patent applications worldwide.  (Compl. ¶ 1.)

1    After the company moved into the new lab space, KorvaLabs, Martin, and Scott
2    gave Toutov a KorvaLabs stock grant certificate signed by Martin and Scott as Board
3    Members "reaffirming" Toutov's 20% ownership of the company.  (*Id.* ¶ 41, Ex. A.)
4    The stock grant was unconditional and not subject to any vesting schedule.  (*Id.* ¶ 42.)

5    Toutov became KorvaLab's "Chief Science Officer" and was listed as a
6    member of its board of directors.  (*Id.* ¶¶ 43, 54, Ex. C.)  He oversaw the expansion of
7    the company's lab space to double its initial size and was instrumental in obtaining
8    Clinical Laboratory Improvement Amendments ("CLIA") certification, which was
9    necessary for the company to expand its testing to offer clinical diagnostic testing for
10   certain human biological samples.  (*Id.* ¶¶ 31, 33, 45–47, 51, 69.)

11   Toutov did not receive any monetary compensation from the company during
12   his tenure.  (*Id.* ¶ 52.)  To the contrary, he paid expenses incurred on behalf of the
13   company.  (*Id.*)  He worked "tirelessly" to support KorvaLabs's success because of his
14   equity interest in the company and the agreement that he would receive additional
15   cash compensation once the company earned reasonable revenues.  (*Id.*)

16   In August 2019, unbeknownst to Toutov, KorvaLabs removed his name from
17   the list of directors in a filing with the Secretary of the State.  (*Id.* ¶ 56.)  In September
18   2019, Martin and Scott failed to attend a scheduled meeting with Toutov to discuss the
19   company's operations and future.  (*Id.* ¶ 58.)  Then, in late 2019, Martin and Scott
20   demanded that Toutov voluntarily relinquish his 20% equity interest in the company.
21   (*Id.* ¶ 59.)  When Toutov refused, he was shut out and ousted from the company.  (*Id.*)
22   Toutov asked Scott about his equity interest, and Scott directed Toutov to send a
23   request to review the company's books and records.  (*Id.* ¶ 61.)  Toutov sent the
24   request on two separate occasions in January 2020 but never received the books and
25   records requested.  (*Id.* ¶¶ 61–62.)

26   In May 2020, KorvaLabs changed its name to "Curative Labs Inc.," and then
27   merged with "Curative Inc.," a company newly registered with the California
28   Secretary of State.  (*Id.* ¶ 21, 64–65.)  In mid-2020, Martin and Scott also registered

1   Korva Holdings, LLC, and Korva Scientific, Inc. with the California Secretary of
2   State.  (*Id.* ¶ 66.)  Toutov alleges that Curative Labs, Curative Inc., Korva Holdings,
3   and Korva Scientific are merely alter egos of one another and are different names for
4   the same corporate entity.  (*Id.* ¶¶ 11, 21, 67–68.)

5        Curative Labs continues to operate out of the same CLIA-certified lab space
6   Toutov secured, built, and established in San Dimas.  (*Id.* ¶ 69.)  Since early 2020, the
7   company used this infrastructure to pivot and provide COVID-19 testing, obtaining
8   Emergency Use Authorization to conduct COVID-19 testing at the San Dimas site.
9   (*See id.* ¶¶ 70–71.)  The company became very successful and realized in excess of ten
10  million dollars in profits during 2020.  (*Id.* ¶ 74.)

11       Despite his 20% ownership, Toutov has not received a share of the company's
12  corporate profits and distributions, nor has he been provided access to the company's
13  books and records.  (*Id.* ¶¶ 74–75.)  Accordingly, Toutov filed the instant suit against
14  Curative Labs (formerly known as SA Laboratories and KorvaLabs), Curative Inc.,
15  Martin, Scott, Korva Holdings, and Korva Scientific.[3]  Toutov asserts four causes of
16  action: (1) violation of California Corporations Code section 1600, for refusal to
17  provide the company's books and records for review, against Curative Labs (Claim
18  One); (2) breach of fiduciary duty, against the Individual Defendants (Claim Two);
19  (3) accounting, against all Defendants (Claim Three); and (4) breach of contract,
20  against Curative Labs, Curative Inc., and Korva Defendants, all as alter egos of each
21  other (Claim Four).  (*Id.* ¶¶ 78–97.)  Defendants move to dismiss all claims.[4]

22
23
24  [3] Scott and Martin are collectively "Individual Defendants," and, together with Curative Labs and Curative Inc., they are "Curative Defendants."  Korva Scientific and Korva Holdings are collectively
25  "Korva Defendants."
26  [4] Although the four Curative Defendants jointly filed a single motion to dismiss, the Individual Defendants filed a separate reply from Curative Labs and Curative Inc.  (Cur. Entities Reply, ECF
27  No. 28; Ind. Defs. Reply, ECF No. 33.)  To the extent new arguments are raised in any reply, the Court does not consider them.  *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district
28  court need not consider arguments raised for the first time in a reply brief.").  As such, the Court **sustains** Toutov's objection.  (Pl.'s Obj., ECF No. 39.)

### III.   LEGAL STANDARD

A court may dismiss a complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City and Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## IV.   DISCUSSION

Curative Defendants move to dismiss the Complaint on the basis that Toutov fails to state a claim.  (Curative Mot. 2–3.)  Korva Defendants move to dismiss Claims Three and Four, arguing Toutov fails to adequately plead an alter ego theory of liability against them.  (Korva Mot. 1–2.)  The Court considers each cause of action in turn, delaying analysis of the accounting claim until after the other three.

### A.   California Corporations Code Section 1600 *et seq.* (Claim One)

Toutov contends that Curative Labs violated California Corporations Code section 1600 by depriving him of his statutory right to inspect corporate books and records.  (Compl. ¶¶ 78–83.)  California Corporations Code 1601 provides that, "upon the written demand on the corporation of any shareholder," documents including "accounting books, records, and minutes of proceedings of the shareholders and the board" must be made available.  Directors, too, have the "absolute right" to "inspect and copy all books, records and documents of every kind and to inspect the physical properties of the corporation."   *Id.* § 1602; *see, e.g.*, *Havlicek v. Coast-to-Coast Analytical Servs., Inc.*, 39 Cal. App. 4th 1844, 1856 ("Being a remedial statute, [section 1602] must be liberally construed.").

Curative Defendants seek dismissal of this claim, arguing Toutov has not sufficiently alleged that he is a shareholder or director of Curative Labs such as would entitle him to request inspection of its books.  (*See* Curative Mot. 8.)   They also contend Toutov could not have sought Curative Labs's records in January 2020 because "Curative Labs" did not exist until May 2020.  (*Id.*)

Relevant here, it is well-settled law that "a change in name does not affect the identity of a corporation."   *Mut. Bldg. & Loan Ass'n of Long Beach v. Corum*, 220 Cal. 282, 292 (1934); *see also Steril-Aire, Inc. v. First Light Techs., Inc.*, No. SA CV 08-682 AHS (ANx), 2009 WL 10674417, at *2 (C.D. Cal. Aug. 11, 2009) ("[N]ame change alone does not change corporate obligations." (quoting *Alley v. Miramon*, 614 F.2d 1372, 1384 (5th Cir. 1980))).  On the contrary, "[t]he change of a

corporation's name is not a change of the identity of a corporation and has no effect on the corporation's property, rights, or liabilities." *Carl Zeiss Vision GmbH v. Signet Armorlite, Inc.*, No. 09-cv-00657 DMS (POR), 2009 WL 10725774, at *2 (S.D. Cal. July 28, 2009) (quoting *Alley*, 614 F.2d at 1384).

Toutov alleges he accepted the offer of a 20% ownership interest in the company operating as KorvaLabs and was later formally granted a stock certificate for "25 of 125" shares of KorvaLabs K-stock, "reaffirming" his equity interest in that company. (Compl. ¶¶ 30, 32, 40–42.) Although the company was initially incorporated under the name "SA Laboratories," it changed its name to "KorvaLabs" and ultimately became "Curative Labs, Inc." (*See id.* ¶¶ 30, 55, 64.) Thus, Toutov's allegation that these companies are all the same entity operating under different names over time is plausible. *See Abbott Bldg. Corp. v. United States*, 951 F.2d 191, 196 (9th Cir. 1991) (explaining "there is no support for the proposition that a change of name results in a change of entity[;] [i]nstead, the authority is quite to the contrary").

Accepting Toutov's allegations as true and drawing all reasonable inferences in his favor, Toutov sufficiently alleges he is a shareholder of Curative Labs, entitling him to inspect the company's records. The same is true regarding Toutov's right as a Curative Labs director. (*See* Compl. ¶¶ 6, 54, Exs. C–E.) The books and records Toutov sought to review in January 2020 are of the type to which he is entitled under section 1600. *See Greater San Diego Cnty. Ass'n of Realtors, Inc. v. Sandicor Inc.*, No. 16-cv-96-MMA (KSC), 2016 WL 4597536, at *11 (S.D. Cal. May 25, 2016) (finding plaintiff stated a claim under section 1601 where "[p]laintiff's requests encompass at least some of the types of documents (accounting books and records, for example) it has a right to inspect"). As such, the Court **DENIES** the Curative Motion on Claim One.

**B.     Breach of Fiduciary Duty (Claim Two)**

Toutov claims that Martin and Scott, as directors, officers, and majority shareholders, breached their fiduciary duties of disclosure, loyalty, and care to him as

a minority shareholder.    (Compl. ¶¶ 84–89.)    Curative Defendants argue that the business judgment rule precludes Toutov's breach of fiduciary claim.    (*See* Curative Mot. 8–11.)    Curative Defendants are mistaken.

"California's business judgment rule . . . requires directors to perform their duties in good faith and as an ordinarily prudent person in a like circumstance would. It immunizes directors from liability if they can establish that they acted in accordance with this standard of care."  *F.D.I.C. v. Castetter*, 184 F.3d 1040, 1043 (9th Cir. 1999). Application of the business judgment rule is a factual issue "wholly inappropriate for consideration on a motion to dismiss."  *In re AWTR Liquidation Inc.,* 548 B.R. 300, 337 (Bankr. C.D. Cal. 2016) (citing *Fed. Sav. & Loan Ins. Corp. v. Musacchio*, 695 F. Supp. 1053, 1064 (N.D. Cal. 1998)); *F.D.I.C. v. Hawker*, No. CV F 12-0127 LJO DLB, 2012 WL 2068773, at *8 (E.D. Cal. June 7, 2012).    Additionally, the rule applies only to *disinterested directors*, not officers or interested directors like Martin and Scott.    *See, e.g.*, *Gaillard v. Natomas Co.*, 208 Cal. App. 3d 1250, 1265–66 (1989).  Toutov alleges Martin and Scott were officers and directors of Curative Labs: Martin the CFO and COO, and Scott the CEO.  (*See* Compl. ¶ 29.)  Thus, the rule would not apply to them in any event.  Curative Defendants' business judgment rule argument fails as a matter of law.

Furthermore, Toutov has sufficiently alleged a claim against Martin and Scott for breach of fiduciary duty.    The elements of breach of fiduciary duty are the existence of a fiduciary relationship, its breach, and damages caused by the breach. *Knox v. Dean*, 205 Cal. App. 4th 417, 432 (2012).  "California law clearly recognizes that officers and directors owe a fiduciary duty to stockholders and controlling stockholders owe a fiduciary duty to minority stockholders."  *Singhania v. Uttarwar*, 136 Cal. App. 4th 416, 426 (2006).  Here, Toutov alleges the Individual Defendants were controlling shareholders, directors, and officers of Curative Labs and he was a minority shareholder.  (Compl. ¶¶ 3, 6.)  Thus, there is no question they owed him fiduciary duties.  *See id.*

Toutov also provides sufficient detail regarding how the Individual Defendants breached those duties.  He alleges they demanded he voluntarily relinquish his 20% ownership interest in the company without regard for his reasonable expectation of return on his investment, and, when he refused, they excluded him from the company.  (Compl. ¶¶ 10, 58–59.)  Moreover, Toutov alleges how the Individual Defendants engaged in transactions for their sole benefit and to the disadvantage of Toutov's minority interest, (*id.* ¶¶ 63–66, 74, 76); failed to notify Toutov of board meetings and decisions to remove him as a director, (*id.* ¶¶ 55–57); and refused to provide books and records for inspection, (*id.* ¶¶ 61–62).  These allegations are sufficient to establish the Individual Defendants breached their fiduciary duties to Toutov.  *See Sheley v. Harrop*, 9 Cal. App. 5th 1147, 1171 (2017) ("California courts have often recognized that majority shareholders . . . have a fiduciary responsibility to the minority and to the corporation to use their ability to control the corporation in a fair, just, and equitable manner." (internal quotation marks omitted)).

Lastly, Toutov sufficiently pleads damages caused by the Individual Defendants' breach, in the loss of his ownership interest, deprivation of corporate profits and distributions, years of uncompensated work, and unreimbursed out-of-pocket expenses.  (*Id.* ¶¶ 5, 10, 74, 76.)

Thus, Toutov sufficiently alleges a claim for breach of fiduciary duty, and the Curative Motion is **DENIED** as to Claim Two.

**C.    Breach of Contract (Claim Four)**

Toutov claims that Curative Labs, Curative Inc., and Korva Defendants, as alter egos of each other, have breached the parties' stock grant agreement, the corporate bylaws, and shareholder agreements by disavowing Toutov's 20% equity interest and refusing to pay him any profits or distributions.  (*Id.* ¶¶ 92–97.)  Defendants argue Toutov fails to plead sufficient facts regarding any agreement, its terms, or Defendants' purported alter ego status.  (*See* Curative Mot. 12–14; Korva Mot. 4–8.)

To plead a claim for breach of written contract, a plaintiff must allege: (1) the existence of a contract; (2) plaintiff's performance; (3) defendant's breach; and (4) resulting damages. *See Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). A plaintiff may establish the existence of a contract by quoting its terms, attaching it to the pleading, or clearly alleging the substance of the relevant terms. *See United Med. Devices, LLC v. Blue Rock Cap.*, No. CV16-1255 PSG (SSx), 2016 WL 9047157, at *2 (C.D. Cal. Aug. 10, 2016). "The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy." *Moncada v. W. Coast Quartz Corp.*, 22 Cal. App. 4th 768, 777 (2013).

### 1.   Curative Defendants

Accepting well-pleaded allegations as true at this pleading stage, Toutov sufficiently alleges the existence and relevant substantive terms of the stock grant agreement with Curative Defendants. Toutov alleges that he accepted the company's offer, through Martin and Scott, of "a 20% equity interest in the company and a promise of financial compensation in the future" in exchange for his expertise, reputation, network, and years of contribution. (Compl. ¶¶ 4, 31–33.) Additionally, Curative Defendants' subsequent conduct shows that they "knew their obligations" under these terms. *Moncada*, 221 Cal. App. 4th at 777. For example, they formalized the grant of a 20% interest in the company to Toutov and reported his ownership interest to the State and other official entities. (*See* Compl. ¶¶ 40–41, 54, Exs. A, C–E.) The allegations do not allow Curative Defendants to claim ignorance of their agreement with Toutov for equity interest and a distribution of profits in exchange for his contributions to the company.

Toutov also sufficiently alleges performance and breach. Toutov provided his expertise, experience, and network to help the company acquire and build out specialized lab space, obtain CLIA-certification, expand its testing capabilities, and grow its business. (*Id.* ¶ 33.) Nevertheless, after four years of uncompensated

contributions, Curative Defendants deprived Toutov of his ownership and shareholder rights in the company when they ousted him and refused to recognize or compensate his equity.  (*Id.* ¶¶ 10, 14, 59.)  These allegations are sufficient to state a claim for breach of contract against Curative Defendants.  Therefore, the Curative Motion is **DENIED** on Claim Four.

> 2.   *Korva Defendants*

Korva Defendants argue Toutov fails to allege any contract with them or facts demonstrating they are alter egos of Curative Labs.  (Korva Mot. 4–8.)  The Court agrees with Korva Defendants here.  Toutov does not allege the existence of an agreement with Korva Defendants.  (*See generally* Compl.)  Accordingly, Toutov's claim against Korva Defendants turns on whether he alleges alter ego status.  He does not.

To establish an alter ego relationship, there must be (1) "such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities . . . do not in reality exist," as well as (2) "an inequitable result if the acts in question are treated as those of the corporation alone."  *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1042 (C.D. Cal. 2015) (quoting *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (2000)).

Toutov provides no facts suggesting a unity of interest between Curative Defendants and Korva Defendants.  Rather, he alleges only that the Individual Defendants registered the Korva Defendants in mid-2020 and, therefore, "[o]n information and belief," Curative Defendants and Korva Defendants are alter egos of each other and the same entity.  (Compl. ¶¶ 11, 66–68, 85, 91.)  Such "[c]onclusory allegations of 'alter ego' status are insufficient to state a claim."  *Gerritsen*, 112 F. Supp. 3d at 1042.  As Toutov fails to allege a unity of interest, the Court need not consider "inequitable result."  *See id.*  Accordingly, the Court **GRANTS** the Korva Motion on Claim Four, **with leave to amend**.

**D.     Accounting (Claim Three)**

Toutov contends Defendants must provide him an accounting of the company's books and records.  (Compl. ¶¶ 90–91.)  Defendants argue that Toutov fails to identify any "relationship" with Defendants or to allege that they owe him any money. (Curative Mot. 11–12; Korva Mot. 8–9.)

Accounting is an equitable proceeding to be used "where there is an unliquidated and unascertained amount owing that cannot be determined without an examination of the debits and credits on the books to determine what is due and owing." *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1136–37 (2014).   A plaintiff need only allege facts showing "the existence of the relationship which requires an accounting and the statement that some balance is due the plaintiff." *Kritzer v. Lancaster*, 96 Cal. App. 2d 1, 7 (1950).  "Generally, an underlying fiduciary relationship" suffices, provided there is some underlying misconduct by the defendant. *Prakashpalan*, 223 Cal. App. 4th at 1137.  Notably, "[a] pleader is not required to state facts which are peculiarly within the knowledge of his opponent." *Kritzer*, 96 Cal. App. 2d at 8 (affirming overruling of demurrer to accounting claim).

Toutov alleges he was shareholder and director of Curative Labs.  (Compl. ¶¶ 6, 41, 43, 54.)  This, along with his allegations that Curative Defendants wrongfully ousted him from the company, entitles him to an accounting from Curative Labs.  *See Prakashpalan*, 223 Cal. App. 4th at 1137.

Moreover, as the merger of Curative Labs and Curative Inc. does not free Curative Inc. from Curative Labs's obligations, Toutov's accounting claim extends to Curative Inc.  The general rule is that, where one corporation sells or transfers all of its assets to another corporation, the purchaser may be liable for the debts and liabilities of the target when (1) the purchaser expressly or impliedly agrees, (2) the transaction is a merger of the two corporations, "(3) the purchasing corporation is merely a continuation of the selling corporation, or (4) the transaction is entered into

fraudulently to escape liability for debts." *McClellan v. Northridge Park Townhome Owners Ass'n, Inc.*, 89 Cal. App. 4th 746, 753 (2001) (emphasis omitted). Toutov's allegations satisfy either the second or third criteria: he alleges that Curative Labs merged with Curative Inc. in May 2020, (Compl. ¶¶ 63–65), and that Curative Inc. is merely a continuation of Curative Labs, because it had no meaningful operations prior to the merger and relies on Curative Labs's infrastructure and certifications to operate, (*id.* ¶¶ 65, 72). Thus, the Curative Motion is **DENIED** on Claim Three.

Regarding Korva Defendants, Toutov's alleged right to an accounting is entirely derivative of his contract claim against them. *See Janis v. Cal. State Lottery Comm'n*, 68 Cal. App. 4th 824, 834 (1998) ("A right to an accounting is derivative; it must be based on other claims."). As Toutov's breach of contract claim against Korva Defendants fails, so too does his claim for an accounting. *See id.* Accordingly, the Korva Motion is **GRANTED** on Claim Three, **with leave to amend**.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Curative Motion to Dismiss. (ECF No. 23.) The Court **GRANTS** the Korva Motion to Dismiss **with leave to amend**. (ECF No. 31.) Toutov may amend his complaint to remedy the deficiencies noted above by **September 21, 2021**. If Toutov timely files an amended complaint, all Defendants shall respond to the amended complaint within **fourteen days** of it being filed. If Toutov does not timely file an amended complaint, Curative Defendants shall respond to the Complaint **by October 5, 2021**, and the dismissal of the Korva Defendants will convert to one with prejudice.

**IT IS SO ORDERED.**

August 31, 2021

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**