O

# United States District Court
# Central District of California

| | |
|---|---|
| ANTON TOUTOV,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CURATIVE LABS INC. et al.,<br><br>　　　　　　Defendants. | Case № 2:20-cv-11284-ODW (ASx)<br><br>**ORDER DENYING DEFENDANTS'<br>MOTIONS FOR SUMMARY<br>JUDGMENT [87] [110]** |

## I.　INTRODUCTION

Plaintiff Anton Toutov initiated this action for breach of contract and fiduciary duties regarding his claimed minority ownership of an anti-doping laboratory startup company that ultimately became a very profitable COVID-19 testing company. (*See* Compl., ECF No. 1.)  Defendants move for summary judgment, primarily arguing that Toutov cannot prove he was ever an owner-shareholder of the company and is therefore not entitled to the relief he seeks.  (Martin & Scott Mot. Summ. J. ("MS Mot." or "Martin & Scott Motion"), ECF No. 87; Curative Mot. Summ. J. ("Cur. Mot." or "Curative Motion"), ECF No. 110.)  For the reasons discussed below, the Court **DENIES** both Motions.[1]

---

[1] Having carefully considered the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

As it must on a motion for summary judgment, the Court sets forth the material facts, some of which are obviously disputed, and views all reasonable inferences to be drawn from them in the light most favorable to Toutov, the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Here, the number of material factual disputes is telling from the outset.

### A. The Company

In 2014, Jonathan Martin and Paul Scott founded SA Laboratories Inc. (Martin & Scott Statement of Uncontroverted Facts ("MSUF") 1–2, ECF No. 87-2; Curative Statement Uncontroverted Facts ("CUF") 1, ECF No. 110-1.) As of March 2015, SA Laboratories was officially doing business as "Kor'va Labs." (MSUF 5.) In December 2018, SA Laboratories formally amended its name to KorvaLabs, Inc. (MSUF 21; CUF 18.) In May 2020, KorvaLabs, Inc. again amended its name, this time to Curative Labs Inc. ("CLI"). (MSUF 29; CUF 18.) As discussed below, CLI is now a wholly-owned subsidiary of Curative, Inc. ("Curative"). (CUF 14; Toutov Statement Genuine Disputes re: CUF ("TGDC") 107, ECF No. 127-1.) For the purposes of this Order, the Court refers to the entity known as SA Laboratories, Kor'va Labs, and CLI as the "Company" or "CLI."

### B. The Ownership

Martin and Scott assert that the Company was authorized to issue ten million shares of stock, and did issue four million shares each to Scott, the Chief Executive Officer, and to Martin, the Chief Financial and Chief Operating Officer. (CUF 2–3, *disputed by* TGDC 2–3; MSUF 4 (undisputed re: roles).) Toutov agrees that Martin and Scott each owned 40% of the Company, but contends that he also owns 20% of the equity based on a 2015 oral agreement with Martin and Scott. (Toutov Statement Genuine Disputes re: MSUF ("TGDMS") 40–41, 43, ECF No. 100-1, *disputed in part by* Resp. TGDMS 43, ECF No. 103-1; CUF 20–21, 23; TGDC 20–21, 23.) The parties dispute whether the Company issued shares to non-party Robert Tsai for cash

and equivalents. (CUF 3, *disputed by* TGDC 3.) They also dispute whether the Company held annual meetings or maintained a contemporaneous stock ledger. (*See* MSUF 3, *disputed by* TGDMS 3; CUF 3–4, *disputed by* TGDC 3–4.)

**C.     The Agreement**

The parties agree that, in May 2015, Martin and Scott entered an oral agreement with Toutov concerning a 20% stake in the Company. (MSUF 7; TGDMS 41.) Beyond this, the parties dispute the terms of the agreement. Toutov contends Martin and Scott offered Toutov 20% equity to join the Company, which equity would vest once he completed his Ph.D. and obtained his U.S. Permanent Resident Visa. (TGDMS 7, 43.) Martin and Scott contend they offered Toutov "a conditional 20% stake in [the Company] in exchange for his raising funding and procuring clients," subject to Martin's and Scott's satisfaction. (MSUF 7; Resp. TGDMS 43.) Curative and CLI contend Martin and Scott entered the agreement as individuals, (CUF 20), while Toutov contends Martin and Scott entered the agreement on behalf of the Company, (TGDC 20).

In September 2016, Toutov received his Ph.D. in chemistry at Caltech and obtained his U.S. Permanent Resident Card. (MSUF 11; TGDMS 53.) Martin and Scott took Toutov out to dinner to celebrate. (MSUF 11, 14.) Toutov contends the dinner also celebrated the vesting of his 20% ownership interest and his assuming the role of Chief Science Officer. (*See* TGDMS 11, 14.) At the dinner, Martin and Scott gave Toutov two papers. (MSUF 14.) The first had Toutov's photo and read "Anton Toutov PhD / Permanent US Citizen," and the second read "K-Stock Certificate: This certifies that Anton Toutov, PhD is the holder of 25 shares of the 125 shares issued by Korva Labs, Inc." (MSUF 12–13.) Martin and Scott contend these papers were novelty items; Toutov contends the stock certificate symbolically represented the vesting of his 20% ownership interest in the Company. (MSUF 13, *disputed by* TGDMS 13.)

### D. Toutov as Owner-Director

Toutov contends that, from the time he joined SA Laboratories in 2015 and continuing through 2019, Martin and Scott conducted business and held Toutov out as an owner and director of the Company. For instance, they filed documents with government agencies including: Statements of Information with the California Secretary of State identifying Toutov as a Director or an Owner, (TGDMS 62, 70; TGDC 73, 80); a "Disclosure of Ownership and Control Interest Statement" with the California Health and Human Services Agency, identifying Toutov as an owner, (TGDMS 71; TGDC 78); a business license with the City of San Dimas, adding Toutov's name to Martin's and Scott's, (TGDMS 63; TGDC 75); and "Notification of Laboratory Change" and renewal applications with the California Department of Public Health, identifying Toutov as an owner of the Company, (TGDMS 72–73; TGDC 79). Martin and Scott also represented Toutov as an owner in other ways, including by informing USCIS that Toutov's position with SA Laboratories was an "equity position," (TGDMS 49); telling new hires they needed to interview with Toutov, the "third owner," (TGDMS 56; TGDC 77); and stating in emails to Toutov that "[w]e are all owners of the [C]ompany and will share the burden of [a proposed business] loan," (TGDMS 77–78; TGDC 81).

Martin, Scott, CLI, and Curative contend Toutov was never an owner or shareholder of the Company. (*See, e.g.*, MSUF 25, *disputed by* TGDMS 25; CUF 38, *disputed by* TGDC 38.)

### E. Removal of Toutov & Sale to Curative, Inc.

Disputes arose between Martin, Scott, and Toutov with respect to Toutov's ownership interest and the May 20, 2015 agreement. (*See* TGDMS 88.) Toutov asserts that his requests for meetings or details about the Company's finances went largely unanswered. (*See* TGDMS 75–76, 80, 85.) In August 2019, the Company filed a Statement of Information with the Secretary of State removing Toutov as a director without Toutov's knowledge. (TGDMS 84; TGDC 83.) In September 2019,

the Company filed a "change in ownership" with the California Department of Public Health, omitting Toutov from the list of owners. (TGDMS 86; TGDC 83.) In December 2019, the Company deleted Toutov's email account. (TGDMS 90.) Toutov claims that, in the fall of 2019 and early 2020, the Company, Martin, and Scott tried to persuade Toutov to relinquish his equity, including through a Mutual Release for $5,000, (TGDMS 88); a voluntary return, (TGDMS 93, *disputed by* Resp. TGDC 86, ECF No. 123-1); and a buyout, (TGDMS 94). Toutov declined. (TGDMS 89, 93; TGDC 82.)

On May 8, 2020, Martin, Scott, and Tsai executed a Stock Purchase Agreement to sell all their Company shares to Curative. (MSUF 26–27; CUF 5; TGDC 124.) Curative contends that Martin and Scott comprised the Company's board of directors, which voted unanimously to sell to Curative. (CUF 7, 16.) Curative also contends that Martin, Scott, and Tsai were the only shareholders, and they approved the sale unanimously. (CUF 7.) On May 27, 2020, the Company amended its Articles of Incorporation to change its name to CLI. (MSUF 29; CUF 18.)

**F.     Compensation**

Toutov contends the Company's financial documents establish that, from 2016 to 2018, Martin and Scott paid themselves annual shareholder distributions on a 50-50 basis. (TGDMS 103; TGDC 105.) Martin and Scott testified that they did not make shareholder distributions to themselves in these years. (Resp. TGDC 105.)

It is undisputed that Toutov never received compensation from Martin, Scott, CLI, or Curative. (TGDMS 96, 99; TGDC 87.) It is also undisputed that Toutov never agreed to sell his equity, although Defendants dispute that Toutov ever owned any equity. (TGDMS 100; TGDC 87, *disputed by* Resp. TGDC 87.) It is undisputed that Curative purchased the Company for $27.5 million. (TGDC 123.)

**G.     Procedural Background**

Toutov brings this action against Defendants Martin, Scott, CLI, and Curative (CLI and Curative together are "Curative Defendants"). (*See* Compl.; *see also* Notice

of Dismissal Korva, ECF No. 52.)  Toutov asserts four causes of action: (1) books and records against CLI; (2) breach of fiduciary duty against Martin and Scott; (3) accounting against all Defendants; and (4) breach of contract against the Curative Defendants.  (Compl. ¶¶ 78–97.)  Martin and Scott move for summary judgment on the claims against them and Toutov's request for punitive damages.  (*See* MS Mot.)  Curative Defendants move for summary judgment on the claims against them and the issue of alter ego liability between Curative and CLI.  (*See* Cur. Mot.)

### III. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986), and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott*, 550 U.S. at 378. A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment.  *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment.  *Anderson*, 477 U.S. at 255; *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment.  *See Celotex Corp.*, 477 U.S. 317, 322–23 (1986); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "non-moving party must show that there are 'genuine factual issues that properly can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party*.'" *Cal. Architectural Bldg. Prods.*, 818 F.2d at 1468 (quoting *Anderson*, 477 U.S. at 250). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Id.* (emphasis omitted) (citing *Matsushita*, 475 U.S. at 586–87). "[U]ncorroborated and self-serving" testimony will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out "the material facts as to which the moving party contends there is no genuine dispute." C.D. Cal. L.R. 56-1. A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute. C.D. Cal. L.R. 56-2. "[T]he Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." C.D. Cal. L.R. 56-3.

### IV. EVIDENTIARY OBJECTIONS

The parties each object to various items of evidence. Generally, where the objected evidence is unnecessary to the resolution of the summary judgment motion or supports facts not in dispute, the Court need not resolve those objections. For similar

reasons, relevance- and foundation-based objections are moot in the context of summary judgment motions. *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006). The Court does not consider improper argument or legal conclusions offered in the parties' statements of fact and dispute, (*see* Scheduling & Case Management Order ("Case Order") 7–9, ECF No. 58), and to the extent the Court relies on objected-to evidence in this order without further discussion, those objections are overruled, *see Burch*, 433 F. Supp. 2d at 1122 (proceeding with only necessary rulings on evidentiary objections).

### A.  Toutov's Objections

Toutov objects to Defendants' proffered annual shareholder meeting minutes and stock ledger on the bases of "hearsay within hearsay" and "insufficient foundation on authenticity." (Toutov Objs. MS Evid. 1–2, ECF No. 100-82; Toutov Objs. Cur. Evid. 2–4, ECF No. 114.) As to "foundation on authenticity," Defendants submit declarations based on personal knowledge as well as deposition testimony in support of these exhibits. (*See* Decl. Paul Scott ISO MS Mot. ¶¶ 9–10, ECF No. 87-4; Decl. Jonathan Martin ISO MS Mot. ¶¶ 10–11, ECF No. 87-5; Decl. David M. Peterson ISO Cur. Mot. ("Peterson Decl.") Ex. 1 ("Martin Dep."), Ex. 5 ("Scott Dep."), ECF Nos. 110-2, 110-3, 110-7.) The Court finds this sufficient foundation to authenticate these exhibits for the purposes of summary judgment. *See Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987) ("[D]ocuments must be authenticated by and attached to an affidavit that meets the requirements of [Rule] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence.").

As to "hearsay within hearsay," the Court may consider evidence on a motion for summary judgment if that evidence could be presented in an admissible form at trial. *See Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003); *cf. Burch*, 433 F. Supp. 2d at 1121 ("Material in a form not admissible in evidence may be used to avoid, but not to obtain summary judgment." (quoting *Tetra Techs. Inc. v. Harter*,

823 F. Supp. 1116, 1120 (S.D.N.Y. 1993))). Further, as part of this objection, Toutov asks the Court to reject Defendants' exhibits on the basis of their "trustworthiness," (Toutov Objs. MS Evid. 1), but the Court may not determine credibility on summary judgment, *Anderson*, 477 U.S. at 255. Therefore, as Defendants could potentially offer the evidence in an admissible form at trial, the Court may consider it in resolving Defendants' Motions. Accordingly, the Court **OVERRULES** these objections for the purpose of the Motions.

Toutov also objects to and requests that the Court strike evidence Martin and Scott submit with their reply. (Toutov Objs. & Req. Strike New MS Evid., ECF No. 105; *see* Decl. Vincent Ruocco ISO MS Reply Exs. Y–AA, ECF Nos. 103-4 to 103-8.) The Court need not and does not rely on the objected-to evidence in resolving the Motions, and therefore **DENIES** Toutov's Request to Strike and **OVERRULES** this objection.

### B. Martin and Scott's Objections

Martin and Scott object to the opposition declarations of Toutov and non-party Craig Lund. (*See* MS Objs. Toutov Decl. & Lund Decl., ECF No. 103-2.) However, Martin and Scott fail to comply with the Court's Order regarding presentation of evidentiary objections. (*See* Case Order 8 (requiring evidentiary objections to be presented in relation to the statements of fact or dispute).) In light of Martin and Scott's failure to comply with the Court's requirements and the Court's authority to consider evidence that could be presented in an admissible form at trial, the Court **OVERRULES** Martin and Scott's objections.

### C. Curative Defendants' Objections

Curative Defendants object to several aspects of Toutov's opposition declaration on the grounds that it is a sham-declaration that contradicts Toutov's prior deposition testimony. (*See* Cur. Objs. Toutov Evid. 9, ECF No. 123-5.) Curative Defendants' objections here center on Toutov's claim that Martin and Scott made the equity offer on behalf of the Company and not as individuals. (*See id.*) The Court

does not find the objected-to declaration testimony directly contradictory to Toutov's prior deposition testimony. *See Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) ("[T]he 'inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit.'"). Therefore, the Court **OVERRULES** Curative Defendants' sham-declaration objections for the purpose of the Motions. *See id.* ("[T]he sham affidavit rule 'should be applied with caution' because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment.").

Curative Defendants also object to Toutov's Exhibit 27, his handwritten notes from a January 2020 meeting with Scott, on the bases that the document is not properly authenticated and is unreliable. (*See* Cur. Objs. Toutov Evid. 15.) Toutov supports the document with declaration testimony regarding its authenticity, (Decl. Anton Toutov ISO Opp'n Cur. Mot. ¶ 28, ECF No. 113-2), and Curative Defendants' argument that the document is "unreliable" mirrors Toutov's improper request above by asking the Court to assess Toutov's credibility on summary judgment, *see Anderson*, 477 U.S. at 255. Accordingly, the Court **OVERRULES** Curative Defendants' objection to Toutov's opposition Exhibit 27, for the purpose of the Motions.

Finally, Curative Defendants object generally to Toutov's Statement of Genuine Disputes on the basis that Toutov includes improper responses throughout his Statement. (Cur. Objs. Toutov Evid. 1.) This objection is well-taken, although the Curative Defendants are guilty of the same sin. (*See, e.g.*, Resp. TGDC 63, 66, 88.) To the extent the Court relies on the objected-to facts, the Court is not aided by pages-upon-pages of cut-and-paste unresponsive additional facts where it expects a direct response to discrete factual assertions. As the Court finds voluminous and non-responsive assertions unhelpful, the Court **SUSTAINS** Curative Defendants' objection. The non-responsive portions of Toutov's and Curative Defendants' Statements are not considered in resolving Defendants' Motions.

## V. DISCUSSION

Martin and Scott move for summary judgment on Toutov's claims against them, for breach of fiduciary duty and accounting. (MS Mot. 1–2.) Curative Defendants move for summary judgment on Toutov's claims against them, for books and records (against CLI), accounting (against Curative Defendants), and breach of contract (against Curative Defendants). (Cur. Mot. 1–2.) Defendants argue that these claims all fail because (A) Toutov never possessed an owner-shareholder interest in the Company, and (B) Toutov cannot establish any element of his breach of contract claim. Additionally, Martin and Scott move for partial summary judgment on Toutov's request for punitive damages, and Curative Defendants move for partial summary judgment on the issue of alter ego liability. (MS Mot. 1–2; Cur. Mot. 1–2.)

### A. Ownership Interest—All Defendants

Defendants argue that Toutov's first claim for books and records, second claim for breach of fiduciary duty, and third claim for accounting each fail because Toutov was never an owner-shareholder in the Company, so he lacks standing to bring these claims. (MS Mot. 7–12; Cur. Mot. 6–14.). The Court finds that Toutov raises triable issues of fact regarding his owner-shareholder status.

Toutov's first three claims depend on his owner-shareholder status. First, California Corporations Code section 1600 and 1601 entitle a shareholder to inspect the books and records of a corporation.[2] Second, under California law, officers and directors owe a fiduciary duty to stockholders and controlling stockholders owe a fiduciary duty to minority stockholders. *Singhania v. Uttarwar*, 136 Cal. App. 4th 416, 426 (2006). Third, a "cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting." *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009). Thus, for Toutov to have standing to bring his first three claims, he must establish his owner-shareholder status.

---

[2] Toutov concedes he is not a current director of the Company, and therefore is not entitled to inspect the books and records as a director under California Corporations Code section 1602. (TGDC 17 (not disputing that Frederick Turner is currently the sole director on CLI's board).)

1         In California, a shareholder is a holder of record shares, meaning shareholder status is based on record ownership of shares. *Davis v. Yageo Corp.*, 481 F.3d 661, 675 n.9 (9th Cir. 2007) (citing Cal. Corp. Code § 185). A corporation's books and records are "prima facie evidence of the facts shown by the entries therein," including that certain individuals do or do not hold shares of the stock of the corporation. *Kaye v. Metz*, 186 Cal. 42, 52 (1921). However, as prima facie evidence, the books of the company are only a presumptive showing of the facts they contain; that presumption may be overcome by other competent evidence. *See, e.g.*, *Mudgett v. Horrell*, 33 Cal. 25, 30 (1867) (discussing that the presumptive evidence in the company's records was overcome by opposing witness testimony).

          "The issuance of shares of stock of a corporation means the act or contract of the corporation by which shares become vested in a person as a member or stockholder." *People v. Beber*, 104 Cal. App. 2d 359, 367 (1951). "When the corporation has agreed that a person shall be entitled to a certain number of shares in its capital," and that person "has agreed to take and pay for them accordingly, he becomes their owner by a valid contract made upon a valuable consideration." *Id.* at 368 (quoting *Mitchell v. Beckman*, 64 Cal. 117, 121 (1883)); *Reeder v. Finderup*, 78 Cal. App. 305, 308 (1926) (same). Ownership of stock depends on the intent of the parties to the contract; it does not depend on issuance of a certificate or recordation in the corporation's ledgers. *Beber*, 104 Cal. App. 2d at 367–68.

          Here, Defendants contend Toutov is not an owner-shareholder because the Company's stock ledger and annual meeting minutes do not reflect that Toutov was ever issued shares. (MS Mot. 7–12; Cur. Mot. 6–14.) However, the stock ledger and annual meeting minutes, if found to be authentic and reliable, are not "dispositive" as Defendants contend, and instead constitute only prima facie evidence of Toutov's owner-shareholder status, raising a presumption that Toutov may overcome. Toutov offers evidence that, at the least, raises questions about that presumption.

1        The parties agree that Martin and Scott entered into an oral agreement with Toutov for 20% ownership of the Company. (*See, e.g.*, MSUF 7; TGDMS 41; CUF 19.) Toutov offers declaration and deposition testimony that Martin and Scott were acting on behalf of the Company. This evidence also supports that, as part of the 2015 oral agreement, the 20% equity would vest in Toutov when he obtained his Permanent Resident Visa, which he undisputedly did in September 2016. Thus, viewing the facts and drawing reasonable inferences in the light most favorable to Toutov, a reasonable jury could conclude that the Company granted Toutov 20% ownership when he received his Permanent Resident Visa, and Toutov thus owned 20% of the Company as of September 2016. *See Beber*, 104 Cal. App. 2d at 368.

       Toutov also puts forward voluminous evidence supporting that Martin, Scott, and the Company ratified this agreement to make him an owner with words and conduct throughout their relationship. *See Topway Appliance Co. v. The Ant Commandos, Inc.*, No. 5:07-cv-00588-SGL (OPx), 2008 WL 4858772, at *14 (C.D. Cal. Nov. 6, 2008) (citing *Brainard v. De La Montanya*, 18 Cal. 2d 502, 511 (1941)) ("[I]n close corporations . . . corporate actions can be deemed valid even if they were not formally enacted—especially if the action in question was later ratified by word or conduct."). For instance, the Company filed numerous documents with various government agencies indicating that Toutov was an owner; Martin and Scott directed new hires to interview with Toutov as the third owner; Martin and Scott presented Toutov with a symbolic stock certificate representing shares equivalent to 20% equity; and Martin and Scott represented to Toutov in an email concerning a business loan that "[w]e are all owners of the [C]ompany and will share the burden of this loan." (TGDMS 49, 56, 62, 70–73, 77–78; TGDC 73, 77–81.) Viewing this evidence in the light most favorable to Toutov, a reasonable jury could conclude that Martin, Scott, and the Company treated Toutov like a third owner because he was an owner, and that their conduct ratified the 2015 oral agreement.

Toutov raises triable issues regarding his owner-shareholder status. This is sufficient to defeat Defendants' Motions on Toutov's first three claims.

**B.     Breach of Contract—Curative Defendants**

Curative Defendants next argue that Toutov cannot establish any element of his fourth claim for breach of contract against them. (Cur. Mot. 14.) Toutov raises triable issues of fact regarding each element of his breach of contract claim.

To establish a breach of contract claim, a plaintiff must establish "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

First, the parties do not dispute the existence of the 2015 oral agreement. (MSUF 7; TGDMS 41; CUF 19.) Curative Defendants contend that only Martin, Scott, and Toutov are parties to the agreement, and that Curative Defendants are not. (CUF 20, *disputed by* TGDC 20.) However, as noted above, Toutov offers evidence supporting that Martin and Scott were acting on behalf of the Company when they entered into the 2015 oral agreement to grant Toutov 20% equity, and that this agreement was later ratified by the conduct of the Company, Martin, and Scott. Thus, Toutov raises a triable issue regarding whether the Company is a party to the agreement. As for Curative's relationship to the agreement, Toutov argues Curative and CLI are alter egos with each liable for the obligations of the other. (Toutov Opp'n Cur. Mot. 8–9, 23–25, ECF No. 127.) The Court addresses Curative Defendants' arguments against alter ego status more fully below. (*See infra* Section V.E.) Here, the Court simply notes that it finds Toutov raises a triable issue regarding Curative and CLI's alter ego liability and therefore he raises a triable issue about whether Curative is obligated under the agreement, too.

Second, as to performance, Toutov contends that he accepted the Company's offer, through Martin and Scott, of a 20% equity interest in exchange for his expertise, reputation, network, and years of contribution. *See Gowen v. Tiltware LLC*,

437 F. App'x 528, 529–30 (9th Cir. 2011) (finding ownership interest in exchange for joining company constituted an enforceable contract). Defendants do not meaningfully dispute that Toutov joined the Company and utilized his reputation and network for the Company's benefit over several years. Thus, viewing these facts in Toutov's favor, a reasonable jury could conclude that he performed under the agreement.

Third, Toutov contends Curative Defendants breached the agreement by denying Toutov the benefits of his ownership, "including profit distributions and cash compensation" as well as "the opportunity to sell his 20% equity" to Curative with the other shareholders. (Toutov Opp'n Cur. Mot. 10–12.) This is a legally cognizable breach of the agreement. *See Perata v. Oakland Scavenger Co.*, 111 Cal. App. 2d 378, 387 (1952). It is undisputed that Toutov never received compensation from the Company and was excluded from the profits of sale to Curative. Thus, Toutov raises a triable issue regarding whether Curative Defendants breached the agreement by, at least, excluding Toutov from the sale to Curative.

Fourth, Toutov contends he has been damaged by Defendants' denying him the benefits of his owner-shareholder status, as either 20% of the company's profit distributions between 2015 and 2019, or 20% of the sale value to Curative. (Toutov Opp'n Cur. Mot. 13.) Curative Defendants argue that Toutov did not disclose these damages during discovery or timely supplement his disclosures. (Cur. Mot. 18–22.) The Court addresses Curative Defendants' argument concerning Toutov's discovery disclosures more fully below. (*See infra* Section V.C.) Nevertheless, Toutov has maintained from the inception of this litigation that his damages amount to 20% of the company's profits or sale value. (*See* Compl. ¶ 95.) Curative Defendants produced evidence in discovery from which Toutov's claimed 20% may be calculated. (*See* TGDC 120, *disputed by* Resp. TGDC 120; Decl. Margaret N. Buckles ISO Toutov Opp'n Cur. Mot. Exs. 30, 36–40, ECF Nos. 113-30, 113-32 (Scott Dep. 261:3–13), 113-42 (CLI Income Statements), 127-2 to 127-6 (Stock Purchase Agreement,

financial spreadsheets, and consolidated financial statements).) Toutov may rely on Curative Defendants' disclosures to prove-up his 20% damages interest. Therefore, Toutov raises a triable issue regarding his damages.

Viewing the facts and drawing reasonable inferences in the light most favorable to Toutov, a reasonable jury could find in Toutov's favor on each element of his breach of contract claim against Curative Defendants. Therefore, Toutov raises triable issues sufficient to defeat Curative Defendants' Motion on this claim.

C. **Damages Disclosures—Curative Defendants**

Curative Defendants argue Toutov did not disclose his damages computations before the discovery cut off and therefore he may not now rely on any evidence of damages to defeat summary judgment. (Cur. Mot. 18–21.)

The Federal Rules of Civil Procedure ("Rule" or "Rules") require plaintiffs to provide an initial disclosure of "a computation of each category of damages claimed by the disclosing party." Fed. R. Civ. P. 26(a)(1)(A)(iii). The duty to supplement these disclosures is ongoing and does not stop at the discovery cutoff. *See* Fed. R. Civ. P. 26(a)(1)(E), (e). Failure to meet these disclosure obligations may result in a party being prohibited from using at trial of any information that is not properly disclosed. *See* Fed. R. Civ. P. 37(c); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105–07 (9th Cir. 2001) ("Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed."). However, where such an evidentiary sanction would deal "a fatal blow" to a plaintiff's claim, a district court must consider whether the noncompliance with Rule 26 involved willfulness, fault, or bad faith, as well as whether lesser sanctions are available. *R & R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1247 (9th Cir. 2012). Whether to issue an evidentiary sanction is within the court's discretion. *Yeti by Molly*, 259 F.3d at 1106.

Toutov has maintained from the outset of this action that his damages amount to 20% of the Company's profits or sale value. (Compl. ¶ 95.) He disclosed this

consistently in discovery, through deposition testimony, interrogatory responses, and disclosures. (Peterson Decl. Exs. 20, 22–23.) After Defendants produced the Company's financial statements just before the discovery cut-off, Toutov appropriately supplemented his damages disclosures based on the new information, to support his claim to 20% of the Company. (*Id.* Ex. 24; Buckles Decl. Exs. 46–47.) Although Toutov's general incorporation of Defendants' financial documents lacks the desired specificity, nothing before the Court suggests Toutov's failure was due to "willfulness, fault, or bad faith." *R & R Sails*, 673 F.3d at 1247. Finally, Curative Defendants do not address lesser sanctions in their Motion, (*see generally* Cur. Mot.), and the Court declines to do so on its own, particularly where, as here, Toutov has had no opportunity to respond to the possibility.

Accordingly, Toutov may rely on Defendants' financial documents disclosed in discovery in proving up his damages.

### D. Punitive Damages—Martin and Scott

Martin and Scott move for partial summary judgment on Toutov's request for punitive damages against them, arguing Toutov can offer no evidence of malice, oppression, or deceit to justify such an award. (MS Mot. 12–13.) Toutov raises triable issues regarding his entitlement to punitive damages against Martin and Scott.

A plaintiff may recover punitive damages on a non-contract claim where the defendant has been guilty of malice, fraud, or oppression. Cal. Civ. Code. § 3294(a). Summary judgment on the issue of punitive damages is inappropriate unless "no reasonable jury could find the plaintiff's evidence to be clear and convincing proof of" these motives. *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1053 (2009); *see also PPG Indus., Inc. v. Transam. Ins. Co.*, 20 Cal. 4th 310, 317 (1999) ("[I]n California, punitive damages are awarded for punishment and deterrence . . . .").

Here, Toutov argues Martin and Scott have engaged in a campaign to deprive Toutov of his rightful ownership interest in a successful company that he helped

develop from its infancy. (Toutov Opp'n MS Mot. 24–25.) He offers evidence and argument that Martin and Scott removed him from the Company's official governmental filings without his consent, fabricated Company records to reflect that Toutov lacked an owner-shareholder status, refused to disclose information about the Company's finances, and then sold the Company without consulting Toutov or compensating his equity. (*See supra* Sections II.E, V.A.) Viewing the facts and reasonable inferences in the light most favorable to Toutov, a reasonable jury could find this evidence to be clear and convincing proof of Martin and Scott's malice, oppression, or fraud.

As such, Toutov raises triable issues sufficient to defeat Martin and Scott's Motion as to punitive damages.

**E.     Alter Ego—Curative Inc. and CLI**

Curative Defendants move for partial summary judgment on Toutov's claims against Curative for accounting and breach of contract, on the grounds that Toutov cannot establish that CLI and Curative Inc. are alter egos.[3] (Cur. Mot. 22–24.)

Generally, a parent corporation and its subsidiary are treated as separate legal entities, unless the alter ego doctrine applies. *No Cost Conf., Inc. v. Windstream Commc'ns, Inc.*, 940 F. Supp. 2d 1285, 1298 (S.D. Cal. 2013). "To establish that one entity is the alter ego of another, a plaintiff must show" (1) a unity of interest between the entities such that the separate personalities of the entities no longer exist, and "(2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *In re SK Foods, LP*, 499 B.R. 809, 840 (Bankr. E.D. Cal. 2013) (quoting *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985)). A number of non-exhaustive factors are relevant in evaluating alter-ego liability, including commingling of funds or assets, control of the two entities by the same equitable owners or managers, disregard of legal formalities, and failure to maintain arms-length relations between the entities.

---

[3] Toutov concedes that Curative and CLI have not merged, (TGDC 15); therefore, the Court does not address Curative Defendants' arguments regarding lack of merger, (Cur. Mot. 24).

*Zoran Corp. v. Chen*, 185 Cal. App. 4th 799, 811–12 (2010). Whether the alter ego doctrine applies "will depend on the circumstances of each particular case." *Mesler*, 39 Cal. 3d at 300.

Toutov offers evidence supporting that CLI sends nearly all its profits to Curative, the entities share the same CFO, the entities share the same CEO, this CEO is also both entities' sole board member, numerous employees have moved from one entity to the other, and Curative manages payroll for both entities but payroll funding comes from CLI (even the CEO is not certain which entity actually issues the checks). (*See* TGDC 111–13, 115–17.) This is sufficient to raise a triable issue regarding Curative and CLI's unity of interest. Further, despite the abundant evidence of Toutov's status as an owner of the company, Curative ignored Toutov's equity when it purchased the company. Curative Defendants assert that they reasonably relied on the Company's shareholder records to conclude Toutov held no equity. (CUF 6–8, *disputed by* TGDC 6–8.) However, Toutov disputes the authenticity and credibility of those documents, and thus raises a triable issue regarding whether an inequitable result will occur if the Curative Defendants' misconduct is treated as that of CLI alone.

Viewing the facts and drawing reasonable inferences in the light most favorable to Toutov, a reasonable jury could conclude that Curative and CLI are "so organized or controlled as to make one entity 'merely an instrumentality, agency, conduit or adjunct of another.'" *In re SK Foods*, 499 B.R. at 840 (quoting *McLoughlin v. L. Bloom Sons Co., Inc.*, 206 Cal. App. 2d 848, 851–52 (1962)). Toutov thus raises sufficient triable issues to defeat Curative Defendants' Motion on the issue of alter ego liability.

///
///
///
///

## VI. CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendants' Motions for Summary Judgment. (ECF No. 87, 110.)

**IT IS SO ORDERED.**

March 20, 2023

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**